```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


GEORGE RISKUS,                    )
                                  )
        Plaintiff,                )
                                  )
                                  )
                                  )
    v.                            )  No. 1:23-cv-60
                                  )
                                  )
UNITED EMPLOYEE BENEFIT FUND,     )
HERBERT O. McDOWELL III, and      )
JOHN DOES 1-10,                   )
                                  )
        Defendant.
```

Memorandum Opinion and Order

In this action, plaintiff George Riskus alleges that the United Employee Benefit Fund ("UEBF," the "Plan," or the "Fund"), along with Herbert O. McDowell, III, who is alleged to be a Plan fiduciary and/or party in interest, and ten unnamed individuals also alleged to be Plan fiduciaries and/or parties in interest violated ERISA by failing to provide Riskus with reports or documentation informing him how payments he made to the Fund were administered; by terminating a death benefit to which he was entitled without offering him the opportunity to maintain the benefit by purchasing the insurance policy that provided it; and by engaging in self-dealing and other transactions the statute prohibits. Riskus seeks equitable relief in the form of

an accounting, the restoration of his death benefit, the replacement of the Fund's trustees, and other relief. UEBF moves to dismiss all claims against it. The motion is granted for the reasons explained below.

I.

Read together with its attachments, the complaint alleges the following facts, which I presume to be true for present purposes. Riskus is the former president and owner of a company called RJPG Construction. As an RJPG employee, Riskus became a participant in the Plan. Contributions to the Plan are held in trust and are administered for the benefit of Plan participants and beneficiaries. To provide the death benefits specified under the Plan, the trustees purchased life insurance policies covering Plan participants. These policies are owned by the Fund and held under the trust.

In 2004, UEBF purchased a universal life insurance policy on Riskus's life with a death benefit in the amount of $5,250,000. Defendant McDowell acted as the broker in this transaction. Riskus was informed and believed that as long as he made all required contributions to the Fund, his death benefit was vested. Compl. at ¶ 14. From 2004 through August 2022, Riskus made all payments that UEBF informed him were due, and he was insured under one or more universal life insurance policies in effect during that period. All

2

told, Riskus paid the Fund approximately $600,000 between 2004 and 2021 to maintain his death benefit.

Section 8.1 of the Trust Agreement provides that Plan participants can apply for loans from the Fund in amounts up to the present value of their death benefit. Between 2001 and 2014, Riskus received various such loans totaling a principal amount of approximately $125,000. Riskus alleges that at no time did UEBF seek repayment of these loans or inform him of any interest accruing on them. Riskus believed that in the event any portion of his loans from UEBF remained outstanding at the time of his death, the death benefit payment would be reduced by the amount of his indebtedness. Compl. at ¶ 16. That is, Riskus believed that the loans remained in good standing regardless of whether he repaid them during his lifetime, so long as the cash value of his death benefit exceeded the amount he owed.

But in 2012, following a lawsuit challenging loans such as the ones Riskus received from UEBF, UEBF entered into a consent decree with the United States Department of Labor. *See Solis v. Fensler, et al.*, No. 11-cv-6031 (N.D. Ill.). The terms of the consent decree required that these loans either be repaid by the participants or treated as taxable distributions. UEBF did not seek to collect on Riskus's outstanding loans, so in 2013, the Internal Revenue Service brought a proceeding against Riskus alleging that the loans constituted income. Riskus conceded liability and paid

3

taxes, interest, and penalties with respect to the loans he received from UEBF.

RJPG ceased operations in 2014. But Riskus claims that he was never informed that he was no longer eligible to participate in the Plan. At some point in 2018 and 2019, McDowell floated "a proposal to cancel existing life insurance coverage funding Riskus's death benefit and reinstate the coverage with a different insurer," but Riskus does not believe this was done. Compl. at ¶ 24. In any event, UEBF solicited payments from Riskus until 2021, purportedly to maintain his death benefit. Specifically, Riskus alleges that in 2019 and 2021, UEBF requested that Riskus issue checks in the amount of $20,000 and $54,223.80, respectively, "to maintain the life insurance policy funding his death benefit in force." Compl. at ¶ 25. Riskus complied with both requests. Riskus allegedly heard nothing further from UEBF concerning his death benefit or his participation in the Plan until August 10, 2022, when he received a letter stating that his participation in UEBF and his benefits had been terminated.

> Section 7G of the Summary Plan Description provides:
>
> [I]f you cease to be a Participant in the Plan because your Member Employer stops participating in the Plan as a Member Employer, you may purchase the life insurance policy that was used to provide your death benefit for its current net value (as actuarially determined by the insurance company). If the policy's current cash value is less than the policy's full reserve, you may be required to pay the difference. For more information, contact the Plan Administrator.

4

Riskus claims that UEBF never offered him the opportunity to purchase the universal life insurance policy that provided his death benefit, which would have allowed him to maintain the benefit even after his participation in the Plan ceased. As a result, the policy funding his death benefit lapsed and his death benefit was forfeited.

Riskus additionally complains that because that he was not furnished with annual in-force ledgers or any other documentation setting forth the premium payments made on his behalf, loans taken against the policy value, or the cash surrender value of the insurance policy that funded his death benefit, he was unable to ascertain how his payments to the Fund were applied or to verify that any loans taken against the policy were loans that were made to him or were otherwise appropriate uses of Fund assets. In this connection, Riskus notes that two other lawsuits currently pending in this district, *Walsh v. Fensler*, No. 22-cv-1030 (N.D. Ill.), and *Futterman v. United Employee Benefit Plan*, No. 20-cv-6722 (N.D. Ill.), allege that Plan assets were used to make improper loans to trustees and to pay personal expenses and unreasonable compensation to defendant McDowell in violation of 29 U.S.C. §§ 1106(a) and (b).

Count I of the complaint asserts violation of the reporting and disclosure obligations of 29 U.S.C. § 1023(e). Count II claims that defendants breached the fiduciary duties they owed Riskus pursuant to 29 U.S.C. § 1104. And Count III asserts that defendants

5

engaged in self-dealing and other prohibited transaction in violation of 29 U.S.C. §§ 1106(a) and (b).

## II.

To bring a civil action for benefits under ERISA, a plaintiff must be a participant or beneficiary in an ERISA-covered plan. 29 U.S.C § 1132(a)(1). A "participant" under the statute includes a "former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). In addition, persons who have a "colorable claim to vested benefits" are entitled to seek relief under the statute. *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 678 (7th Cir. 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)). The Fund first seeks to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(1), arguing that Riskus lacks standing to sue because his participation in the Plan terminated before he filed suit and because the benefits he seeks were not vested. This argument is unpersuasive.

To begin, as the Seventh Circuit has explained, "standing" is a "misnomer" in this context, where the issue is not whether Riskus alleges "the combination of injury in fact, causation, and redressability," i.e., the focus of the standing inquiry, but rather whether his claims "come within the zone of interests regulated by" ERISA. *Pennsylvania Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015).

Accordingly, courts examining ERISA claims such as plaintiff's should "avoid the language of standing" and focus instead on whether the plaintiff is a participant or beneficiary as ERISA defines those terms or has a colorable claim to vested benefits. *Id*. (citing *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126-28 (2014)). *See also Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 790 (7th Cir. 1996) ("Given the fact that a claimant need only have a 'colorable claim' that he might prevail, we believe that the most useful weapon in weeding out frivolous claims is not Rule 12(b)(1) [lack of subject matter jurisdiction] but Rule 12(b)(6)") (quoting *Sladek v. Bell System Management Pension Plan*, 880 F.2d 972, 976–79 (7th Cir. 1989)) (alteration in *Panaras*). Regardless of how the issue is framed, however, "the requirements for a colorable claim are not stringent; a plaintiff need have only a nonfrivolous claim for the benefit in question." *Kamler* 305 F.3d at 678.

UEBF argues that Riskus has no colorable claim to "vested" rights because ERISA does not require the vesting of welfare rights, and because Riskus does not allege any factual basis for his purported "belief" that his death benefit was in fact vested.[1] While

---

[1] UEBF also argues in reply that the language of the Subscription Agreement establishing Riskus's Plan eligibility belies Riskus's purported "belief." *See* Reply, ECF 18 at 3-4. Even assuming, however, that I may consider the Subscription Agreement, which UEBF attaches to its reply, arguments raised for the first time in reply "are waived because they leave no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021).

7

it is true that welfare benefits do not necessarily vest, "[e]mployers nonetheless may create vested welfare benefits by contract." *Sullivan v. CUNA Mut. Ins. Soc'y*, 649 F.3d 553, 555 (7th Cir. 2011). As I understand Riskus's theory, he does not claim that his death benefit was "vested" in the sense that UEBF could not terminate the benefit if Riskus or his employer ceased being a Plan participant; his theory is instead that the terms of Section 7G of the Summary Plan Description created a vested right by promising participants like Riskus the ability to purchase the insurance policies that funded their benefits. UEBF breached that duty, Riskus claims, by terminating his death benefit without giving him that opportunity. This claim is not frivolous, so my jurisdiction is secure. *See Kamler* 305 F.3d at 678 (7th Cir. 2002); *Kennedy v. Connecticut General Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) ("jurisdiction depends on an arguable claim, not on success" and jurisdiction is lacking only if a claim is frivolous).

With UEBF's jurisdictional challenge out of the way, I turn to its arguments for dismissal under Fed. R. Civ. P. 12(b)(6). The first Count of the complaint asserts violations of 29 U.S.C. § 1023(e), which "requires employee benefit plans to issue annual reports that include statements from insurance companies that reflect premium payments and other relevant information." Compl. at ¶ 32. But UEBF argues without contradiction that no private right of action is available under this section, and, indeed,

8

plaintiff tacitly acknowledges that no substantive relief is available to him for defendants' alleged violation of this provision. *See* Opp., ECF 17 at 8-9. As UEBF observes, courts in this district and elsewhere have held that individuals may not generally sue to enforce violations of ERISA's reporting and disclosure requirements. *Pappas v. Buck Consultants, Inc.*, No. 89 C 6137, 1989 WL 157517, at *4 (N.D. Ill. Dec. 12, 1989) (Congress did not intend to create "a private right of action based upon ERISA reporting requirements"), *aff'd*, 923 F.2d 531 (7th Cir. 1991). *See also Jacobs v. Verizon Commc'ns, Inc.,* No. 16 CIV. 1082 (PGG), 2017 WL 8809714, at *14 (S.D.N.Y. Sept. 28, 2017) (citing, *inter alia*, *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir. 1995) ("under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act"[2])). Accordingly, Riskus's claim for violations of 29 U.S.C. § 1023(e) is dismissed with prejudice.

---

[2] Riskus does not invoke § 502(a)(1)(A) of ERISA, which provides that any administrator who fails to provide information required to be disclosed under ERISA within 30 days after a request for such information is made may, in the court's discretion, be held personally liable. 29 U.S.C. § 1132(a)(1)(A) (referencing § 1132(c)). Indeed, Riskus does not allege that he made any request for information from any Plan administrator.

9

In response to UEBF's motion, Riskus reframes his claim for failure to satisfy ERISA's reporting and disclosure requirements as arising under the general fiduciary duties imposed by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). But this claim, too, suffers from several independently fatal flaws. Most saliently, Riskus fails to allege the first element of such a claim—that UEBF is "a plan fiduciary." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). A person is an ERISA fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* at 465 (quoting 29 U.S.C. § 1002(21)(A)). UEBF does not fit any of these categories. UEBF does not control, administer, or render advice concerning the Plan; UEBF *is* the Plan, and "plans cannot be fiduciaries of themselves[.]" *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F. 4th 535, 546 at n.2 (7th Cir. 2022), reh'g denied, No. 21-1872, 2022 WL

10

4126291 (7th Cir. Sept. 9, 2022). For that reason alone, Riskus's breach of fiduciary duty claim must be dismissed as to UEFB.

Moreover, to the extent fiduciary breach claims under ERISA are grounded in a failure to disclose information whose disclosure the statute requires, such claims "require evidence of either an intentionally misleading statement, or a material omission where the fiduciary's silence can be construed as misleading." *Burke v. Boeing Co.*, 42 F.4th 716, 729 (7th Cir. 2022) (citation omitted). Riskus does not point to any misleading statement by any person the complaint identifies as a fiduciary. Riskus's theory boils down to the argument that defendants failed to inform him that he was no longer eligible to participate in the Plan prior to terminating his benefits and failed to take affirmative steps to ensure that his death benefit did not lapse by inviting him to purchase the insurance policy that provided that benefit. But the Summary Plan Description spells out exactly the information Riskus faults defendants for "concealing": that his participation in the Plan was tied to his employment, and that in the event his eligibility for Plan benefits ended—either because Riskus's employment with RJPG terminated, or because RJPG ceased participating in the Plan as a "Member Employer"—he may be entitled to purchase the life insurance policy used to provide his death benefit. *See* Compl., Exh. B at Section 7D ("<u>When You Cease to Be a Participant</u> You will cease to be a Participant in the Plan when your employment terminates");

11

Chapter 5, "How You May Lose Benefits," at 5A ("You will not be eligible for death benefits under the Plan after a termination of employment from a Member Employer" and 5B ("If your Member Employer ceases to participate in the Plan as a Member Employer, you will no longer be eligible for benefits under the Plan. However, in certain circumstances you may be able to purchase the life insurance policy from the Plan that was used to provide your death benefit"). The Summary Plan Description further informs participants how to obtain additional information about the insurance purchase option: "For more information, contact the Plan Administrator." *Id*. at Section 7G.

Riskus does not allege that he contacted the Plan Administrator to inquire about purchasing the insurance policy that funded his death benefit. Moreover, he alleges affirmatively that RJPG ceased operations in 2014, Compl. at ¶ 19, and he acknowledges that pursuant to the Summary Plan Description, "that should have ended his eligibility to be a participant in the UEBF plan," Opp., ECF 17 at 6. On these allegations and admissions, Riskus cannot claim plausibly that the loss of his death benefit was caused by defendants' failure to inform him: 1) that his eligibility for benefits would terminate when his employment with RJPG ended, or 2) that if he wished to maintain his death benefit by purchasing the life insurance policy that funded it, he should contact the Plan Administrator. *See Kenseth*, 610 F.3d at 464 ("[a] claim for

12

breach of fiduciary duty under ERISA requires the plaintiff to prove...(3) that the breach resulted in harm to the plaintiff."). To the extent Riskus grounds his claim for breach of fiduciary duty on acts or omission other than defendants' putative failure to keep him apprised of the status of his benefits, such as their alleged failure to seek repayment of the loans he received or to provide "annual in-force ledgers" documenting how his premium payments were administered, Riskus fails to explain any causal connection at all between these alleged failures and the loss of his death benefit. For these additional reasons, Riskus's claim for breach of fiduciary duty does not survive dismissal.

This leaves only Riskus's claim that defendants violated ERISA by engaging in self-dealing and other prohibited transactions. In support of this claim, the complaint refers in broad brush strokes to allegations asserted in *Walsh*, *Futterman*, and a third case he describes as "*Bates v. McDowell*, No. 21-cv-5238, currently pending in the Northern District of Illinois which alleges that McDowell breached his fiduciary obligations to UEBF." Without anything meaningfully more substantial in the way of factual allegations, Riskus claims that "defendants and each of them engaged in a series of prohibited transactions such as making loans and other payments to McDowell and others that were unlawful and which impaired the value and continuation of Plaintiff's death benefit." But Riskus offers no authority to suggest that generic references to claims

13

raised in other cases are enough to raise *his* right to relief, on the theories he asserts here, "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III.

For the foregoing reasons, UEBF's motion to dismiss is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 21, 2023